**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　Plaintiff,<br><br>　　　v.<br><br>**EUSEBIO ESCOBAR DE JESUS [1],**<br>　　　Defendant. | Criminal No. 90-130 (ADC/BJM) |

## REPORT AND RECOMMENDATION

Defendant Eusebio Escobar-De Jesus ("Escobar") was convicted by a jury of sixteen drug, assault, and weapons-related counts, including engaging in a continuing criminal enterprise (Count One), and causing an intentional killing while engaged in said continuing criminal enterprise (Count Twelve), in violation of 21 U.S.C. §§ 848(a) & (c) and 848(e), respectively. Docket ("Dkt.") 1377. On May 24, 1993, this court sentenced him to life imprisonment. Dkt. 945. On September 3, 2021, Escobar moved the court for compassionate release. Dkt. 1338. On June 20, 2024, the court granted this motion and lowered his sentence to 48 years. *See* Dkt. 1381. Escobar moves this court again to further reduce his sentence under 18 U.S.C. §3582(c)(2) due to multiple amendments to the Sentencing Guidelines. Dkt. 1388. The government has failed to respond, despite being ordered twice to do so. *See* Dkts. 1394, 1396.

This court has jurisdiction under 18 U.S.C. § 3582(c)(2). This matter was referred to me for a report and recommendation. Dkt. 1390. For the following reasons, the court should **DENY** Escobar's motion to reduce sentence.

## BACKGROUND[1]

---

[1] Factual and Procedural Background is taken in part from U.S. Magistrate Judge Hector Ramos's previous Report and Recommendation at Docket 1377.

*United States of America v. Eusebio Escobar-De Jesus*, Criminal No. 90-130-1 (ADC/BJM)          2

For his participation and leadership role in a large drug-trafficking organization, Escobar was convicted by a jury of sixteen drug, assault, and weapons-related counts, including engaging in a continuing criminal enterprise (Count One), and causing an intentional killing while engaged in said continuing criminal enterprise (Count Twelve), in violation of 21 U.S.C. §§ 848(a) & (c) and 848(e), respectively. On May 24, 1993, Escobar was sentenced to life imprisonment as to Counts One, Ten, Twelve and Twenty; ten (10) years as to Counts Seven, Fifteen and Sixteen; five (5) years as to Counts Eleven, Seventeen and Eighteen; and four (4) years as to Counts Nineteen, Twenty-Three, Twenty-Four and Thirty-Three, all to be served concurrently with each other. (*See* Docket No. 1338-3). If ever released, he is to serve a total of five (5) years in supervised release. (*Id.*) On appeal, all the convictions of Mr. Escobar-De Jesus were affirmed. *United States v. Escobar-De Jesus*, 187 F.3d 148 (1st Cir. 1999). On April 7, 2000, Escobar filed his first motion to reduce sentence under 18 U.S.C. §3582(c)(2). Dkt. 1097. On September 30, 2005, he filed a second motion to reduce sentence under §3582(c)(2). Dkt. 1138. On May 26, 2009, Escobar filed a third motion to reduce sentence under §3582(c)(2). Dkt. 1171. On July 21, 2020, Escobar filed a fourth motion to reduce sentence. Dkt. 1199. These attempts were all unsuccessful. *See* Dkts, 1100;1145;1174-75;1209. On September 3, 2021, Escobar moved the court for compassionate release, Dkt. 1338, and on June 20, 2024, the court granted this motion and lowered his sentence from life imprisonment to 48 years. *See* Dkt. 1381.

On November 6, 2024, Escobar filed a motion to reduce sentence under Amendment 821. However, he also cites a number of other amendments and requests this court to further reduce his sentence under18 U.S.C. § 3582(c)(2). Dkt. 1388. The government has failed to respond, despite being ordered twice to do so. *See* Dkts. 1394, 1396.

## STANDARD OF REVIEW

A federal court by and large "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But if the Sentencing Commission reduces a defendant's sentencing guidelines range, Congress permits a federal court to reduce the defendant's term of imprisonment, "after considering the factors set forth in [§] 3553(a) ... if such a reduction is consistent with applicable policy statements" issued by the Commission. 18 U.S.C. § 3582(c)(2). Section 3582, however, in no way creates a right to a sentence reduction. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.10 cmt. backg'd. (mentioning that a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

In determining whether a defendant should receive a sentence reduction, the district court must engage in a two-step inquiry. It must first determine "'the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Dillon v. United States*, 560 U.S. 817, 827, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting USSG § 1B1.10(b)(1) ). The court then must weigh the § 3553(a) factors "and determine whether, in its discretion, the reduction" is "warranted in whole or in part under the particular circumstances of the case." *Id.* In addition to the § 3553(a) factors, the district court "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S. SENT'G GUIDELINES MANUAL § 1B1.10 cmt. n.1(B)(i-iii). And the court "may consider post-sentencing conduct of the defendant." *Id.* "[P]roceedings under 18 U.S.C. [§] 3582(c)(2) and [§ 1B1.10]," however, "do not constitute a full resentencing of the defendant." *Id.* at § 1B1.10(a)(3).

The § 3553(a) factors a court must consider at sentencing include the nature and circumstances of the defendant's offense and the defendant's personal history and characteristics. 18 U.S.C. § 3553(a)(1). Section 3553(a) requires the court ensure that the sentence imposed reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of the defendant, and provides the defendant with needed training, medical care, and other treatment in the most effective way. 18 U.S.C. § 3553(a)(2). Section 3553(a) further requires the court consider the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(3)-(7).

## DISCUSSION

Escobar argues if multiple Sentencing Guidelines Amendment were applied to him today, his sentencing guideline range would be lower. In his motion to reduce sentence, Escobar mentions Amendments 66, 139, 505, 433, 599, 742, 782 and 821. *See* Dkt. 1388 at 13-14. He also briefly states in the introduction that this motion "satisfies the First Step Act." *Id.* at 1. I will address each argument below. However, I should note that the court has previously denied Escobar's motions to reduce sentence pertaining to Amendments 505, 599, and 782. These denials have been affirmed by the U.S. Court of Appeals for the First Circuit ("First Circuit"). As such, the law of the case doctrine applies to these amendments. *See United States v. Tichiarelli*, 171 F.3d 24, 28-29 (1st Cir. 1999).

### i.    *First Step Act*

To the extent Escobar is claiming he is eligible for a sentence reduction under the First Step Act because he was convicted of a "covered offense," I will address the argument. There are two parts to evaluating a motion to reduce sentence pursuant to Section 404 of the First Step Act

of 2018. Pub. L. No. 115-391, 132 Stat. 5194, 5222 ("First Step Act"). First, the defendant must

be eligible for a reduction by virtue of having been convicted of a "covered offense." Second, the

court considers the statutory sentencing factors in 18 U.S.C. § 3553 and determines whether they

weigh for or against a sentence reduction.

"A court that imposed a sentence for a covered offense may, on motion of the defendant .

. . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in

effect at the time the covered offense was committed." First Step Act § 404(b). A "covered

offense" means "a violation of a Federal criminal statute, the statutory penalties for which were

modified by section 2 or 3 of the [Fair Sentencing Act], that was committed before August 3,

2010." *Id*. § 404(a).

The Fair Sentencing Act of 2010 attempted to address inequities in sentencing between

powder and crack cocaine offenses by raising the threshold quantities of crack cocaine triggering

mandatory minimum sentences. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat.

2372 (2010) (the "Fair Sentencing Act"); *United States v. Pierre*, 372 F. Supp. 3d 17, 19-20 (D.R.I.

2019). Section 2 of the Fair Sentencing Act raised the amount of *crack cocaine* required to trigger

a five-year mandatory minimum from 5 grams to 28 grams, and the amount required to trigger a

ten-year mandatory minimum from 50 grams to 280 grams. Fair Sentencing Act § 2(a). Section 3

eliminated the mandatory minimum sentence for simple possession of *crack cocaine*. *Id*. § 3. The

Fair Sentencing Act did not change the penalty for distributing five or more kilograms of powder

cocaine. *United States v. Luna*, 436 F. Supp. 3d 478, 482 (D. Conn. 2020). Because Escobar was

convicted of distributing 80 grams of *powder* cocaine in violation of 21 U.S.C. §841(a)(1), none of the First Step Act sentencing changes apply to him.[2] *See* 21 U.S.C. §841(b)(1)(A).

### ii.    *Amendment 66 and Amendment 139*

Amendment 66 and Amendment 139 made changes to Guideline §2D1.5 and established the base offense level applicable for engaging in a continuing criminal enterprise. Amendment 66 was implemented on October 15, 1988; while Amendment 139 was implemented a year later with an effective date of November 1, 1989. Because both amendments pertain to the same section of the Guidelines, I will address them together.

Escobar's argument as to why Amendment 66 should apply is not fully fleshed out. However, it seems Escobar is arguing he should have been sentenced under the Sentencing Guidelines in place at the time he committed the offense and not the ones in place when he was sentenced in 1993. Escobar argues that being sentenced with the 1993 Sentencing Guidelines violated the *ex post facto* clause of the U.S. Constitution because it increased his base offense level and guideline range. Dkt. 1338 at 8.

Amendment 66 placed the base offense level for a conviction of engaging in a continuing criminal enterprise at 36. U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 1988. As stated above, a year later, § 2D1.5 was revised again with Amendment 139, where the base offense level that applied for engaging in a continuing criminal enterprise would be the greater of "(1) 4 plus the offense level from ¶2D1.1. or (2) 38." U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 1989). Amendment 139 was in effect when Escobar was sentenced so

---

[2] For an explanation why Section 401 of the First Step Act does not apply to Escobar, please refer to the reasoning stated in Magistrate Judge Hector Ramos' Report and Recommendation at Docket 1377 at pp. 9-10.

the question here would turn on whether the court should have applied the Guidelines from 1988 as opposed to 1993 Guidelines.

The Sentencing Guidelines state "the court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." *See* USSG §1B1.11(a). However, if the court determines that applying the Guidelines Manual in effect would violate the *ex post facto* clause of the U.S. Constitution, then "the court shall use the Guidelines Manual in effect on the date that the offense was committed." USSG § 1B1.11(b)(1). But the Guidelines also state if a defendant is convicted of two offenses and the second offense occurred after a revised edition of the Guidelines Manual became effective, then the revised version will apply to both offenses. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.11(b)(3).

Here, Escobar was convicted for offenses committed from 1986 through 1990. *See* Dkt. 934-1 at 7-16. Because the last offense of conviction occurred in 1990, the court applied the revised Guidelines Manual, which did not include the base offense level referred to in Amendment 66. There was no error here and at the time of sentencing, the court applied the correct base offense level of 44. *See* Dkt 934-1 at 21.

### iii.    *Amendment 433*

Next, Escobar lists Amendment 433 in the last page of his motion as one of the amendments that would affect his sentencing guideline range. He makes no argument as to what change this amendment would have on his Criminal History Category. Dkt. 1338 at 14.

Amendment 433 became effective on November 1, 1991, and it expanded the definitions of terms used in §4B1.1 for an offender to be considered a career offender. U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 1991). It should be noted Escobar would have received this amendment when he was sentenced in 1993. However, Escobar was not

determined to be a career offender. *See* Dkt. 934-1 at 28. Therefore, Amendment 433 has no effect on Escobar's Criminal History Category.

### iv.    *Amendment 505*

Escobar lists Amendment 505 as one of the amendments that would affect his sentencing guideline range. He makes no argument as to how or why it applies. Dkt. 1338 at 6, 14. However, Escobar has previously moved the court to lower his sentence based on Amendment 505. *See* Dkts. 1138-2; 1171; 1199. The court has denied his requests and those decisions have been affirmed by the First Circuit. *See* Dkts. 1145; 1174-75; 1191; 1209; 1229. As such, the law of the case doctrine applies. *See Tichiarelli*, 171 F.3d at 28-29. Even if the law of the case doctrine did not apply, Amendment 505 does not have the effect of lowering Escobar's guideline range.

Amendment 505 was implemented in 1994 and "set[ ] the upper limit of the Drug Quantity Table in §2D1.1 at level 38." U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 1994). The Sentencing Commission determined that having a base offense level above 38 for drug quantity itself was not required to ensure adequate punishment because organizers, leaders, managers, and supervisors of such offenses would receive a 4-, 3-, or 2-level enhancement for their role in the offense, and any participant would receive an additional 2-level enhancement if a dangerous weapon is possessed in the offense. *Id.*

Here, while it is true that the starting point in Escobar's offense level would be lowered from 40 to 38, he would still receive 4 points for engaging in a continuing criminal enterprise, 2 points for possession of a dangerous weapon and the 2-point enhancement for using an aircraft[3].

---

[3] Escobar argues the court improperly included this enhancement for conduct he committed in 1986, and a jury found him not guilty of it. Dkt. 1388 at 10-11; *see* Dkt. 945. However, Escobar ignores he was also found guilty of aiding and abetting the willful travel in interstate commerce from Miami to Puerto Rico "with intent to promote and carry on an unlawful activity, to wit, working in furtherance of a continuing criminal enterprise and importation and distribution of

Under Amendment 505, his new total offense level would be 46 but there would not be a change in his guideline range, which would still be life imprisonment.

**v.    *Amendment 599***

Escobar also argues his offense level would be lowered by applying Amendment 599 because a weapons enhancement should not have been applied as he was already convicted under 18 U.S.C. §922(g). Dkt. 1338 at 10-11. Escobar has previously moved the court to lower his sentence based on Amendment 599. *See* Dkt. 1171 at 15. The court has denied his request and the decision was affirmed by the First Circuit. *See* Dkt. 1174-75; 1191. As such, the law of the case doctrine applies. *See Tichiarelli*, 171 F.3d at 28-29. Even if the law of the case doctrine did not apply, Amendment 599 does not have the effect of lowering Escobar's guideline range.

Amendment 599 became effective in 2000 and "expand[ed] the commentary in Application Note 2 of §2K2.4 (Use of Firearm, Armor-Piercing Ammunition or Explosive During or in relation to Certain Crimes) to clarify under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive weapon enhancements contained in the guidelines for those other offenses." U.S. Sent'g Guidelines Manual app. C (U.S. Sentencing Comm'n 2000). Under the amendment, a weapon enhancement will not be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction. *See id.* Escobar seems to argue the relevant section applicable to him is the following:

> "A sentence under [§2K2.4] accounts for the conduct covered by these enhancements because of the relatedness of that conduct to the conduct that forms the basis for the conviction under 18 U.S.C. § 844(h), § 924(c) or § 929(a). For example, if in addition to a conviction for an underlying

---

multi-kilogram quantities of cocaine." Dkts. 129 at 36; 945. Said conduct took place in March 1990 and a private aircraft was used. *See* Dkt. 934-1 at 13. As such, the enhancement was properly added.

*United States of America v. Eusebio Escobar-De Jesus*, Criminal No. 90-130-1 (ADC/BJM)        10

offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. § 922(g), the enhancement under §2K2.1(b)(5) would not apply."

*Id.*

First, Amendment 599 does not apply to Escobar because he was not convicted under 18 U.S.C. §924(c). *See* Dkt. 945. Second, Escobar's argument that Amendment 599 does not allow a weapons enhancement because he was convicted under §922(g) is unavailing. The weapons enhancement Escobar received was based on §2D1.1(b)(1) of the Guidelines Manual and not §2K2.1(b)(5). *See* Dkt. 934-1 at 22. Because the amendment is specific as to which guideline section it applies to, Escobar's argument fails and Amendment 599 does not apply to him.

### vi.  *Amendment 742*

Escobar next mentions Amendment 742 in the last page of his motion as one of the amendments that would affect his sentencing guideline range. He makes no argument as to how or why it applies.[4] Dkt. 1338 at 14. However, Escobar received one point under § 4A1.1(e) for committing the instant offense less than two years following release of confinement, and if he were sentenced today, this point would not be added thus lowering his criminal history status points.

Amendment 742 was implemented in 2010 and eliminated the so called "recency" points provided in § 4A1.1(e). U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 2007). Prior to 2010, under § 4A1.1(e), a defendant could receive two points "if defendant committed any part of the instant offense less than two years following release from confinement." *See* U.S. SENT'G COMM'N, GUIDELINES MANUAL § 4A1.1(e) (Nov. 2005). However, if defendant

---

[4] It should be noted that Amendment 742 is not one of the amendments listed by the Sentencing Commission as applying retroactively for a potential sentence reduction. *See* USSG 1B1.10(d).

received two points under § 4A1.1(d) for committing the offense while under a criminal justice sentence, defendant would receive only one point. *Id*.

Here, Escobar received two points for committing the offense while under a criminal justice sentence under § 4A1.1(d). *See* Dkt. 934-1 at 28. He also received a point for committing the offense less than two years from his release from confinement under 4A1.1(e). *Id.* Because the recency point was added, if we applied amendment 742, his status point would be lowered from 14 to 13. However, he would remain in Criminal History Category VI.

    **vii.**    *Amendment 782*

Escobar lists Amendment 782 as one of the amendments that would affect his sentencing guideline range. He makes no argument as to how or why it applies. Dkt. 1338 at 6, 14. However, Escobar has previously moved the court to lower his sentence based on Amendment 782. *See* Dkt. 1255. While U.S. Magistrate Judge Justo Arenas determined Escobar may have been eligible for a sentence reduction under this amendment (*see* Dkt. 1267), the court ultimately denied his request and the decision was affirmed by the First Circuit. *See* Dkts.1287-88; 1304. As such, the law of the case doctrine. *See Tichiarelli*, 171 F.3d at 28-29. Even if the law of the case doctrine did not apply, Amendment 782 does not have the effect of lowering Escobar's guideline range.

Amendment 782 became effective in 2014 and revised "the guidelines applicable to drug trafficking offenses by changing how the base offense levels in the Drug Quantity Table in §2D1.1 (Unlawful Manufacturing, Importing, Exporting or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) incorporate the statutory mandatory minimum penalties for such offenses." U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 2014). Under this Drug Quantity Table, a person convicted of more than 450 kg has a base offense level of 38. *See id.*

Here, while it is true that the starting point in Escobar's offense level would be lowered from 40 to 38, he would still receive 4 points for engaging in a continuing criminal enterprise, 2 points for possession of a dangerous weapon and the 2-point enhancement for using an aircraft. Under Amendment 782, his new total offense level would be 46 but there would not be a change in his guideline range, which would still be life imprisonment.

      **viii.**   *Amendment 821*

Finally, Escobar argues he would receive a sentence reduction under Amendment 821 because it would lower his Criminal History Category from Category VI to II. Dkt. 1388 at 1, 4, 6.

Relevant to this case, Amendment 821 changed how criminal status points were added when defendant committed the offense while under a criminal justice sentence. U.S. SENT'G GUIDELINES MANUAL app. C (U.S. Sentencing Comm'n 2023). Under the amendment, a defendant who had six or less criminal status points would not receive any additional points. However, if a defendant received more than seven criminal status points, he would receive only one point, as opposed to two. *Id.*

As discussed above, Escobar's criminal status points could be decreased by one point under Amendment 742 (from 14 points to 13 points). The PSR states the sum of Escobar's prior convictions would total 11 points. Dkt. 934-1 at 28. Then, the PSR added two points for committing the offense while under a criminal justice sentence for a total of 13 points. *Id.* Under Amendment 821, he would only receive one additional point for committing the offense while under a criminal justice sentence. As a result, his new total criminal status points would be 12. His

Criminal History Category would be lowered to V.[5] Despite his Criminal History Category being lowered, his guideline range does not change. As discussed above, even applying the different Amendments, the lowest his offense level could be is 46. When a total offense level is more than 43, as is the case here, the court is to treat it as an offense level of 43. *See* U.S. SENT'G COMM'N, GUIDELINES MANUAL, ch. 5, cmt. to Sentencing Table n.2. The guideline range under any Criminal History Category for offense level 43 is life. As such, he is not eligible for a sentence reduction. Additionally, it could be argued that Escobar is not eligible for a sentence reduction under Amendment 821 because he has been resentenced to 48 years, which is below his applicable guideline range. *See* Dkt. 1381.

Therefore, Escobar has not shown the listed amendments would reduce his sentence.

### ix.    18 U.S.C. § 3553(a) Factors

Although my findings on the first issue make any subsequent conclusions irrelevant, I will continue the analysis.

Section 18 U.S.C. § 3553(a) outlines seven factors to consider in imposing a sentence. The seven factors are not particularly distinct, especially in the context of reducing rather than imposing a sentence, and most courts considering compassionate release analyze the factors in tandem rather than individually. *See, e.g.*, *United States v. Mackenzie*, 458 F.Supp.3d 53, 56 (D. Mass., 2020). They are (1) the nature and circumstances of the offense along with the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, adequately deter criminal conduct, protect the public from further crimes, and provide the defendant with educational or vocational training or medical care; (3) the kinds of sentences

---

[5] It should be noted that the court sentenced him under Criminal History Category IV. *See* Dkt. 945. The Statement of Reasons does not provide an explanation. *Id.*

*United States of America v. Eusebio Escobar-De Jesus*, Criminal No. 90-130-1 (ADC/BJM)          14

available; (4) the sentencing guideline range; (5) any policy statement issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution for victims of the offense. 18 U.S.C. § 3553(a).

Escobar was convicted of multiple drug, assault, and weapons-related counts, including engaging in a continuing criminal enterprise (Count One), and causing an intentional killing while engaged in said continuing criminal enterprise (Count Twelve). His current sentence of 48 years or 576 months reflects the seriousness of his crimes and promotes deterrence. *See* Dkt. 1381.

As discussed in U.S. Magistrate Judge Hector Ramos's Report & Recommendation, some of the §3553 factors weigh in favor of Escobar's release. Escobar has turned his life towards a positive direction – he has only had one disciplinary infraction since 2002, has participated in numerous educational programs, and had satisfactory work evaluations. Dkt. 1377 at 13. Considering his age and health conditions, Escobar does not pose a danger to the community and to the extent there is any potential danger, the court could impose strict conditions of supervised release. *See id.* Escobar "also seems to have a support system and a re-entry plan that will assist him in the transition from prison to the free community." *Id.*

However, in looking at the kinds of sentences available, the sentencing range established for the offense, and the need to avoid unwarranted sentence disparities among defendants with similar records, whether Escobar's sentence should be reduced further weighs against his favor. Escobar's sentence was already lowered from life imprisonment to 48 years or 576 months. *See* Dkt. 1381. As discussed above, the amendments would only lower his offense level to 46, and the court would apply the guideline range for an offense level of 43, which states the applicable guideline rage is life imprisonment regardless of his Criminal History Category. As such, he is already serving a sentence lower than the recommended one.

I note Escobar's codefendant Erick Flores-Rivera was resentenced to 324 months for conspiring to import cocaine into the U.S. (Count Two) and 84 months for aiding and abetting the forcible assault of a U.S. customs officer (Counts Five and Six) on April 5, 2004. *See* Dkt. 1128. Flores's sentence was reduced again to 210 months for Count Two when the court applied Amendment 782. *See* Dkt. 1281. Although both were found guilty of conspiring to import cocaine into the U.S., Escobar was also found guilty of causing the intentional killing of an individual (Count Twelve), which automatically puts Escobar at a higher base offense level. Dkt. 934-1 at 25-26; Dkt. 945. As such, while Escobar is serving a longer sentence at 576 months than his codefendant, it is below Escobar's recommended guidelines.

Taking all the §3553 factors in tandem, they do not favor Escobar receiving a further reduction in his sentence. As such, I conclude Escobar has not met his burden of showing that he is entitled to a sentence reduction under § 3582(c)(2).

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** the defendant's motion to reduce sentence.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

*United States of America v. Eusebio Escobar-De Jesus*, Criminal No. 90-130-1 (ADC/BJM)        16

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 26th day of February 2025.

s/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge